The complainants brought their bill against defendants for an account of the rents and profits of their father’s cstatei and for distributive shares ofi his personal estate, The facts of the case were, that Patrick Lindsay, the fa- *151 fuer of complainant, died in the year 1744, leaving a widow and five children, and a small estate, which he divided among them by his will, giving his Wife, (in case of her marrying again,) only a child’s share of the personal estate. She qualified as executrix* and possessed herself of the estate, and made an inventory in March, 1747. The estate was in debt, but was considered able to pay its debts. Afterwards, in about two years, she married John Winter, a man of very small property. Winter possessed himself of the estate, lived on it, and received the rents and profits thereof, and applied them to his Own use; except that the children Were maintained on the plantation, on common country fare* and cloathed in homespun cloth, made on the place. He sold some of the personal property to pay the debts; but retained a valuable woman slave, named Cloe, who has had a very large family of children and grand-children, who form the principal object of this suit. There was a small balance due at Lindsay’s death for the slave Cloe, to the person from whom purchased. This was paid — and it is insisted by Winter’s representatives, that the payment was made by Winter with his own money. But this is at least doubtful; and the weight of testimony seemed to establish, that it was with money of the estate; all the proceeds of which came into Ms hands, from Ms marriage till his death. Mrs. Winter died in 1781 or 1782 — Mr. Winter in 1785. He made no division of Patrick Lindsay’s estate, but the whole of it came into the hands of his representatives, who also administered on' the estate of P. Lindsay, with the will annexed.
DECEMBER. 1787.
Lapseoftime not to run against lega, tees, &c.
They are defendant's to this suit, and they insisted, that the estate of Patrick Lindsay could not have paid its debts without Winter’s aid, funds and management: That he maintained and brought up the children, the costs of which would have exhausted the estate: And. that the executors of Lindsay, sensible of that, had consented to Winter's keeping to his own use, absolutely, the woman slave Cloe, and her children, and the stock, which was all that remained of the personal estate of Lindsay, to compensate him for his trouble and expense in brim; *152 ing up the children, and paying the debts of the estate.
The defendants also insisted that the children of Patrick Lindsay knew and acquiesced in all these circumstances; for they never brought any suit against Mr. Winter, during the life of himself, (though forty years elapsed between his marriage and death,) or his wife, They had indeed intimated some claims on Cloe and her children; which induced Winter before his death to desire his family, if ever such c'aim was attempted to be enforced, to make out an account against them for maintenance and support — but not otherwise.
The cause came to a hearing in December, 1787, and whs argued by Hugh and Edward Rutledge for complainant, and by Pringle and general Pinckney for defendant.
For complainant it was insisted, that the statute of limitations will not run against legacies or distributive shares of an estate; and that the presumptions arising from the staleness of the claim, were rebutted by the facts that the complainants were brought up in great ignorance, and did not know their rights for a long time; and they were also restrained by respect for their mother, who, as acting executrix must have been sued together with Winter: That she did not die till 1782, and the Court of chancery was not re-established till 1784; soon after which they brought their suit against Winter’s representatives, he dying in 1785: That their claim for distributive shares was incontestible, as no act had been done to change the property: That executors were not at liberty under our act of 1745 to take the estate, even at an appraisement, and convert it to their own use.
For defendants, the great length of time, and the staleness of the claim were relied upon. It raised a presumption that the complainants had acquiesced in Winter’s keeping the property absolutely, which could only have resulted from their consciousness that the full value of their father’s personal estate had been exhausted by Winter, in paying debts and maintaining the children.
The court delivered its opinion, stating that the property in Cloe and her descendants remained in the complainants; That although by the act of assembly (of the *153 25th May, 1745, 3d sec.) executors are made liable for Hie full value of the property of the estate, which came to their hands, this was not intended to enable them to change the property, and take it to themselves at art appraised or estimated value; but the time intent and meaning of the act, (as appears by the preamble of this clause, and other parts of it,) was to prevent executors from changing or taking the property in any other way than by a fair, open, and public sale: And this court will support the real object of that law, whenever it can lay its hands on the property of the testator, without subjecting the parties to any singular hardship, by unravelling accounts and transactions of a very distant period, when it is probable many important papers might have been lost, and prejudice result to the parties, especially if the executors are dead. But such inconveniences cannot result here— the claim is for a specific property, which the defendants acknowledge is in being, and in their possession, the: restoration of which is very simple. That the right is in the complainants there is no doubt. The executors had no right nor authority (if they really had attempted it) to transfer the property to Winter, on such a consideration as it has been contended they did. But to put the matter beyond all dotibtj Winter, by marrying the widow and only acting executrix, became in her right an executor, and was equally with her a trustee for the children, and accountable as such; and not holding and accountable as a mere stranger. If defendant’s statement of the accounts is allowed, in its full force, and that Winter paid the debts, yet it appears very strongly, that there was only a small balance (871. old currency,) due on the debt for Cloe. It is proper that Cloe and her descendants should be decreed to complainants, reserving to Mrs. Winter’s representatives, her sirpi part under the will of her first husband Lindsay. But there ought not to be any account for the hire and labour of the negroes, because of the laches of complainants in not prosecuting their claims earlier.
Decreed, that the negroes named in the exhibit C„ (Cloe and her descendants,) be appraised and divided by M< tmdes* the direction of the master, and that five «I-itlr. *154 of them in value, he delivered by defendants to complam-ants as their distributive shares of the estate of Patrick jg¡nc|say} a!lii |n fug satisfaction for such shares,- — Costs divided.